HENRY C. HAYDEN, Appellant, *v.* DANIEL M. TUCKER, Respondent.

1. *Equity—Nuisance—Injunction.*—Equity will interfere by injunction in case of a direct, continuing, and permanent nuisance, without compelling the plaintiff to resort to repeated actions at law. To authorize this interference, there must be such an injury as from its nature is not susceptible of an adequate compensation by damages at law, or such as from its continuance must occasion a constantly recurring grievance, which cannot otherwise be prevented but by injunction. It is only necessary that a party should establish his right in an action at law preparatory to obtaining an injunction, where a question of title is involved, or the right itself is doubtful or uncertain. A purchaser of land may have his action for the continuance of a nuisance erected before his purchase was made. The keeping and standing of jacks and stallions within the immediate view of a private dwelling is a nuisance.

Hayden v. Tucker.

*Appeal from the Callaway Circuit Court.*

This suit is a proceeding commenced by injunction in the Callaway Circuit Court by Hayden against Tucker, to restrain a nuisance. A temporary injunction was applied for and granted. The nuisance consisted in the standing of jacks and stallions adjoining to the dwelling-house and premises of plaintiff—the noise of animals being heard both day and night, and the exhibitions both in the covering of mares and jennets, and also while running at large in the lots, could be seen from plaintiff's dwellings, as well also from the public highway; the trying pole and jackpit being in full view of the premises of the plaintiff, and could be seen from his windows, and also from the public highway. One of the stable lots run up parallel with, and cornered with plaintiff's front yard; and in the corner nearest to plaintiff's house, and in full view of the front of the house, was the point usually occupied by the jacks—denominated by the witnesses as "their stamping ground." Plaintiff complained that by reason of the proximity of these lots, stables, and animals, and concomitant fixtures and appliances—pit and pole—that the same was a nuisance; that he could not enjoy his property; that by the constant noise day and night, made by the jacks and stallions; the habits of such animals; their vulgar exhibitions, both in the lots, at the trying pole, and at the jackpit, the same was a nuisance which annoyed himself and family, and depreciated the value of his property to such a degree as to render it unfit for habitation, and therefore prayed that the same be perpetually enjoined.

The defendant in his answer denied that it was a nuisance; alleged that plaintiff had bought the property after the erection of the stables, and therefore had no right to complain.

The cause came on for trial at the April term, 1865, before the court, the Hon. G. H. Buckhardt presiding, upon the petition and answer, and evidence was introduced by plaintiff showing the distance and position of the stables, lots, trypole, and pit, from the dwelling-house. The evidence offered by

plaintiff showed that plaintiff's dwelling was but thirty-seven and a half feet from the lot next to the plaintiff's house; that plaintiff's garden run down to within a short distance of the stable, jackpit and trypole, and that the whole institution and performances could be seen from plaintiff's garden, back yard, and the back windows of his house, and also from the public highway leading past the plaintiff's house, upon which public highway two of these stable lots fronted; and that the animals generally, when in the lot, stood in the corner denominated the "stamping ground," within fifty feet of plaintiff's front door, and in full view of his house; and that the stables were two hundred feet from plaintiff's house. It was also shown that the animals had been seen covering mares from the public highway. It was also proved that the lot upon which the dwelling-house was built was bought for the purpose of building a dwelling-house upon it before the erection of the stables. It was also shown that the dwelling-house and stable were erected the same year, but the stable was built first. The ell of the dwelling-house was built the same spring that the stable was erected, and the front in the fall of the year. It was shown, also, that before the erection of the dwelling-house one stallion was kept at the stable, and that three jacks and one additional stallion were brought there after the erection of the dwelling. Plaintiff also showed that the noise of the jacks was very annoying to the occupants of the house at all hours and times. By reason of the insufficiency of the fencing, the jacks would break through upon plaintiff's premises, and run up to his door.

The continuous character of the nuisance was shown by the offer of plaintiff of a certain sum, proved to be sufficient for the removal of the nuisance, and Tucker's refusal to accept.

Judgment being given for defendant, plaintiff appealed.

*Dyer* and *Hockaday*, for appellant.

There are three questions presented for the adjudication of this court.

I. Is the keeping of jacks and stallions, and standing them to mares so near to a public highway, and to the plaintiff's dwelling, that their noise could be heard and their performances seen from the premises and dwelling-house, and the permitting them to run at large in lots annexed to the stable, adjoining to plaintiff's front yard, and within a few feet of his house, by reason of the habits of such animals—of their continual braying and noise, and obscene exhibitions and demonstrations—a nuisance? And, in addition to all this, suffering them to break through on to the plaintiff's enclosure, and come up to his very door. It is, without doubt, a physical nuisance, a moral nuisance, a public nuisance, as well also a private nuisance, by reason of the particular injury to plaintiff. The Circuit Court erred in declaring that this did not constitute a nuisance. (2 Greenl. Ev. §§ 465–66 ; Smith v. McConathy, 11 Mo. 517.) Anything erected so near to a dwelling-house as renders it unfit for habitation is a nuisance. (11 Mo. 523; 3 Barb. 157; 9 Paige Ch. 576; Burr. 337 ; 3 Black. Com. 217; Bouv. Law Dic., Tit. "Nuisance.")

Besides the noise, annoyance, and obscenity of this nuisance, the evidence showed what is true in the experience of all persons acquainted with the nature of these animals, they are dangerous at times, and have been known to kill their keepers. Hence the necessity of legislative intervention in our own State to prevent such animals running at large. (R. C. 1855, p. 849.)

II. If it be a nuisance, then what is the appropriate remedy? Should it not be such as to afford complete and adequate redress? So long as the nuisance remains, an action on the case for damages does not afford redress, because there is continued depreciation of the plaintiff's property, a continued recurrence from day to day and hour to hour of the same annoyance. Even if, in an action on the case, a jury could properly estimate the damages, the relief would be compensation for the past injury, and not indemnity for the future. It would require a multiplicity of actions which would not only subject the plaintiff to the vexation of the

Hayden v. Tucker.

continued nuisance, (which of itself is sufficient for the interference of equity by injunction,) but also to vexatious litigation. If there is any case where a court of equity would be justified in interposing by injunction, it is a case like the present where no adequate damages could be assessed at law, and where the nuisance is not temporary but continuous. This is a criterion laid down by Judge Story in his commentaries on Equity. (2 Sto. Eq. § 927.; Mitf. Eq. Pl. ; Attorney General v. Nichols, 16 Ves. 338; 18 Ves. 211; 2 Myl. & C. 123; 19 Ves. 617; 3 Myl. & K. 169; 12 Simm. 416; 1 Myl. & K. 154, 181; Adams' Eq. 154, 181; Jer. Eq. Jur. p. 309, § 1; 1 McL. 355; 6 Ves. 689; 6 Barb. 152; 7 Barb. 395; 9 Wend. 571.) These authorities also show that in case of doubt, a court of equity does not dismiss the bill, but directs a trial at law, and in the meantime restrains all injurious proceedings.

As the court below decided that there was *no cause of action at all*, of course there would be no relief by an action for damages, no more than by injunction. (Coker v. Birge, 9 Geo. 425; Soltean v. Deheld, 9 Eng. L. & Eq. 104; State v. Haines, 31 Me. [17 Shepl.] 65; Howard v. Lee, 3 Sand., S. C., 281; 3 Barb. 157; 7 Barb. 395; 6 Barb. 152.)

III. There is no priority of right in the defendant to bar plaintiff's action. Upon the facts he can claim no priority. Now, for the sake of argument, assuming the facts to be true that this abominable nuisance—a foul blot upon the social refinement of the village—an insult to public decency—located upon and in full view of a great public thoroughfare, daily and hourly travelled—so admitted by his plea of confession and avoidance, and fully established by the facts—does any length of time give him, *par excellence*, the right thus to insult public decency—thus to establish a public nuisance? The law is clear that every day's continuance is a fresh nuisance, and that no length of time will legalize a nuisance. It is a continual offence.

All the authorities concur that the improvement or extension of a town or village cannot be retarded or impeded by

offensive trades and callings, and that they must give way to the spirit of public improvement. (3 Barb. 157; 1 Den. 257–61; 3 Black. Com. 220; 2 Kern. 492; Cro. Eliz. 191; 1 Leon. 103; Staple v. Spring, 10 Mass. 74; Alexander v. Kerr, 2 Rawle.)

It is not alone a nuisance to the public, but also a private nuisance, by reason of the special damage to the plaintiff in the enjoyment of his property, and also by its depreciated value. In fact the evidence showed that it could not be comfortably used and enjoyed as a dwelling-house at all. (Milton v. Martin, 7 Mo. 307.) There can be no doubt that plaintiff, who came in under King, succeeded to all his rights. (3 Barb. 160; 15 Wend. 526; Cro. Eliz. 402.)

*Sheley* and *Boulware*, for respondent.

I. That this being (if nuisance at all) a private nuisance, the chancellor will not interfere to enjoin unless it has been erected to the annoyance of the right of appellant long previously enjoyed. It must be a case of strong and mischievous necessity, or the right previously established at law, before the party is entitled to the aid of a court of equity. (Van Bergen v. Van Bergen, 3 John. Ch. 282; Wildon et al. v. Martin, 7 Mo. 307; Lexington & Ohio R.R. Co. v. Applegate, etc., 8 Dana, 300; White v. Boothe, 7 Vt. 131; Robinson v. Pettinger, 1 Green, Ch. 57; Caldwell v. Knott, 10 Yerg. 209; Porter v. Witham, 17 Me. 292; Givin v. Melmoth, 1 Freem. Ch. 505.)

II. The property in this case being situated outside the corporate limits of Fulton, and Tucker having previously erected the stables, and used the same for standing stallions and jacks before Hayden purchased his property, and before the improvements were erected thereon, a court of equity will not interpose to abate or enjoin, although it may be a great annoyance. (Baptist Church v. U. & S. R.R. Co. 6 Ban. 318; Shields v. Arndt, 3 Green, Ch. 234; Simpson v. Justice, 8 Ired. Eq. 120; Earl of Rippon v. Hobart, 7 Cond. & Eng. Ch. 474; Dumesnil v. Dupont, 18 B. Mon. 804.)

III. This being a case purely in equity, and triable alone by the court, the court was not bound to give any declarations of law; and if such were given, although erroneous, and others were refused, although correct declarations of law, yet the judgment of the court being for the right party, the Supreme Court will not interfere.

IV. Stables and lots in the country used and occupied for standing stallions and jacks, although contiguous to the property of another, do not in law constitute a nuisance.

V. The pleadings in this case exclude the idea of a public nuisance, and the declarations of law asked by plaintiff alluding to public nuisance were properly refused.

VI. The evidence shows that 'Hayden had a full knowledge of the objects and purposes to which Tucker put the stables and lots in question, as well as the location of said lots and stables, at the time, and for a long space of time prior to Hayden's purchase of his present dwelling; therefore, even if the keeping and standing stallions and jacks on said lots be a nuisance, Hayden cannot complain. (Dana et al. v. Valentine, 5 Metc. 14.)

VII. Tucker having used and occupied the lots and stables for a number of years as a place for keeping and standing his jacks and stallions, and of which Hayden had personal knowledge, the law will not permit him to purchase property contiguous thereto, and move thereon, and have said stables and lots abated as a nuisance. (Sto. Eq. J. 6th ed. § 924, and note; White v. Booth, 7 Vt.; Robison v. Pittenger, 1 Greene, Ch. 57; Reid v. Grifford, 6 John. Ch. 19.)

WAGNER, Judge, delivered the opinion of the court.

*Sic utere tuo ut non alienum lædas,* is a sound as well as an ancient maxim of the law. It is an established rule, as old as the common law itself, that a man should so use his property as not to injure his neighbor; and hence if one carry on a lawful trade in such a manner as to work harm or annoyance to another, he will be answerable. Thus it has been held in the old books, that if a man erects a smith's

forge, swine-sty, lime-kiln, privy, or tallow furnace, in such close proximity to the dwelling-house of another as to render it unfit for habitation, he will be liable to an action. (Bradley v. Gill, Lutw. 29; Aldred's Ca. 9 Coke, 58; Jones v. Powell, Hut. 135; Morley v. Praquell, Cro. Car. 510.) And it is not indispensable to maintain this right of action, that the owner should have been driven from his dwelling or habitation; it is sufficient if the enjoyment of life and property has been rendered uncomfortable. (Rex v. White, 1 Bur. 337, per Ld. Mansfield.)

Nuisances are of two kinds, public and private. The former are said to be such inconvenient and troublesome offences as annoy the whole community in general, and not merely some particular person. (4 Bl. Com. 167.) The latter is defined to be anything done to the hurt or annoyance of the lands, tenements or hereditaments of another. (3 Bl. Com. 216.)

It is in many cases difficult to determine to which of these claims an alleged nuisance belongs. Many, indeed, there are which may be regarded as both public and private. Thus, if one does an act which operates injuriously to another, it will be a private nuisance for which he shall have his action for redress; but if, in addition thereto, it is detrimental to a whole neighborhood, or to the community at large, it is also a public nuisance, and the subject of criminal as well as civil prosecution. But where a person sustains some particular damage beyond the rest of the community, by a public nuisance, he may maintain his private action and seek redress in the courts. The action is founded on that inestimable principle of Christian morality which commands every man to do to others as he would have others do to him. The same great principle is recognized and enforced in the law maxims heretofore quoted; and therefore it is that acts in themselves perfectly lawful become wrongful in consequence of time, manner, or place of performing them.

It is insisted by the counsel for the respondent, that the wrong here complained of, even if it does amount to a nui-

sance, having been established before appellant bought the property and moved to it with his family, cannot be remedied by the injunction process; that a court will not interfere to prevent or remove a private nuisance, unless it has been erected to the annoyance of the right of another long previously enjoyed; that it must be a case of strong and imperious necessity, or the right previously established at law; and in support of this several cases are cited. It is true courts will hesitate about granting injunctions in doubtful cases, and the exercise of a power will be denied except in cases of great injury where no adequate or commensurate remedy in damages is afforded at law. But the jurisdiction is undoubted, and founded on the ground of restraining irreparable mischief, or of suppressing oppression and interminable litigation, or of preventing multiplicity of suits. (2 Sto. Eq. Jurisp. § 925.) A right of action may lie against a party for a nuisance, where a court would not be justified in interfering to remove it by injunction. To authorize this extraordinary interference, there must be such an injury as from its very nature is not susceptible of being adequately compensated by damages at law, or such as from its continuance or permanent mischief, must occasion á constantly recurring grievance which cannot otherwise be prevented but by injunction. And this remedy will be allowed where the injury is material, and operates daily to destroy or diminish the comfort and use of a neighboring house, and the remedy by a multiplicity of actions for the continuance of it would furnish no substantial compensation. (2 Sto. § 926.) It is only necessary that a party should establish his right in an action at law preparatory to obtaining an injunction for a nuisance, where a question of title is involved, or the right itself is doubtful or uncertain. (Irwin v. Dixon et al., 9 How., U. S., 10; Dana v. Valentine, 5 Metc. 8.) Every continuance of a nuisance is a fresh one. And this is not only true of the party first injured, but a purchaser may have his action for the continuance of a nuisance erected before his purchase was made, as an heir may have for one

erected in the lifetime of his ancestor. (1 Ch. Pl. 77–95, 7th ed.; Beswick v. Cunden, Cro. Eliz. 402; Rosewell v. Prior, 1 Ld. Raym. 713; Shalmee v. Pultney, *id.* 276.) In Elliotson v. Feetham, (2 Bing., N. C., 134,) the plaintiff alleged in his declaration that he was lawfully possessed of a dwelling-house, in which he with his family dwelt and where he exercised and carried on the profession of doctor of medicine and physician, and that defendant being possessed of a certain manufactory for the working of iron, &c., situate near to his dwelling-house, made divers large fires, and also divers loud, heavy, jarring, varying, agitating, hammering, and battering sounds and noises, whereby the plaintiff and his family were greatly disturbed, and by means of which his premises were greatly lessened in value, and he had been prevented from exercising and carrying on his profession in so ample and beneficial a manner as he otherwise might and would have done. The defendant pleaded that they had been possessed of the said workshops, in which the noise was made, ten years before the plaintiff was possessed of the term in his house, and that they had always during that time made the noise in question, which was necessary for carrying on their trade. On demurrer and joinder the plea was held bad, and judgment given for the plaintiff.

In the Duke of Northumberland v. Clowes, cited in 3 Chitty's Black. 217, note 5, the defendant employed a steam engine in his business as a printer, which produced a continual noise and vibration in the plaintiff's apartment, which adjoined the premises of the defendant, and it was held to be a nuisance. Hight v. Thomas, (10 Ad. & El. 590,) was an action for annoying plaintiff in the enjoyment of his house, by causing offensive smells to arise near to, in and about it. Plea enjoyment, as of right, for twenty years of a mixen on defendant's land, contiguous and near to plaintiff's house, whereby, during all that time, offensive smells occasionally and unavoidably arose from said mixen. On a traverse of of a right, the defendant had a verdict. Held, that the plea was bad, and plaintiff entitled to a judgment *non ob-*

*stante veredicto*, for that it did not show a right to cause offensive smells in the plaintiff's premises, nor that any smells had in fact been used to pass beyond the limits of defendant's own land. So, too, Bliss v. Hall, (4 Bing. 183,) was a case of nuisance for carrying on the trade of a candle maker on premises adjoining the dwelling of the plaintiff. The defendant pleaded that he had carried on the business in the same place of three years before the plaintiff became possessed of his messuage. Upon demurrer, Vaughn, Judge, said, "The smells and noises of which the plaintiff complains are not hallowed by prescription;" and Bosanquet, Judge, said, "The defendant has, *prima facie*, a right to enjoy his property in a way not injurious to his neighbor; but here on his own showing the business he carries on is offensive, and he makes out no title to persist in the annoyance." It is true that the cases above referred to were mostly actions at law, but we perceive no valid or substantial reason for denying the right to equitable relief in like cases. Where the injury is occasional, contingent, fugitive, or temporary, there may be sufficient grounds for withholding this strong arm of equity interposition; but where it is of continued recurrence, and constant in its nature, it is an idle mockery to turn the party over to his remedy at law. Why compel the party to commence a fresh action every day to establish each separate act of nuisance, when the whole can be finally concluded and set at rest by the chancellor on a final hearing? Why flood the courts of the country with litigation, when a plain and ample remedy is provided for avoiding it? Besides, there are some things that cannot be compensated in damages. What verdict will afford adequate remuneration to a man whose home is rendered intolerable by a revolting nuisance? whose social happiness is marred by a disgusting annoyance perpetually bringing the blush of shame to modesty and innocence? We have examined the evidence with attention and care, and we are unable to conceive how a case could be made out more clearly, going to establish a nuisance. The witnesses all concur as to the grievance complained of, and

its immediate proximity to plaintiff's dwelling. Daily and nightly there is no intermission, and even on the Sabbath, a day consecrated to repose, quiet, and divine worship, there seems to be no abatement.

The judgment is reversed, and a perpetual injunction will be entered in this court. The other judges concur.