TOWNSHIP OF GARFIELD v. YOUNG.

1. Nuisance—Junk Yard—Common Law—Statutes.
   The operation of a junk yard is not a nuisance per se either at common law or by a statute of this State.

References for Points in Headnotes
[1, 2]  39 Am Jur, Nuisances § 70.
[3, 4]  39 Am Jur, Nuisances § 153 et seq.
[5, 6]  39 Am Jur, Nuisances § 8.

2. SAME—JUNK YARD—INJUNCTION—VIOLATION OF ORDINANCE—PUBLIC HEALTH.

The operation of a junk yard may not be enjoined as a nuisance per se merely because it is operated in violation of an ordinance which regulates a business affecting public health, welfare or morals.

3. SAME—INJUNCTION—JURISDICTION.

Something more than illegality is required to give a court jurisdiction to enjoin a nuisance.

4. SAME—INJUNCTION—CRIMINAL ACT.

The fact that a public nuisance may also be a criminal act will not prevent it from being enjoined.

5. SAME—PUBLIC NUISANCE.

A public nuisance is an act or omission which obstructs or causes inconvenience or damage to the public in the exercise of rights common to all and, although the entire community may not be affected, those who come in contact with it in the exercise of a public right are affected.

6. SAME—PUBLIC NUISANCE.

A public nuisance must be an activity that is harmful to the public health, create an interference in the use of a way of travel, affect public morals or prevent the public from the peaceful use of their land and the public streets, the question in each case being one of fact and the chancery court must consider the facts peculiar to the particular case.

7. SAME—PROPERTY VALUE—INJUNCTION.

The mere fact that activities may lessen the value of other property in the locality does not constitute such activity an enjoinable nuisance.

8. INJUNCTION—PUBLIC NUISANCE—JUNK YARD.

Finding of trial court that plaintiff township had failed to prove defendant was committing a public nuisance in the operating of his junk yard in a community wherein other commercial activities were conducted and no showing of any public health problem justifying the issuance of an injunction *held*, sustained by the record.

Appeal from Grand Traverse; Pugsley (Earl C.), J., presiding. Submitted October 9, 1956. (Docket No. 70, Calendar No. 46,875.) Decided May 17, 1957.

Bill by the Township of Garfield against Sol H. Young, doing business as Sol H. Young Iron & Metal Company, to enjoin operation of a junk yard under

township zoning ordinance and as public nuisance. Bill dismissed. Plaintiff appeals. Affirmed.

*Harry T. Running,* for plaintiff.

*Charles H. Menmuir,* for defendant.

SMITH, J.  This is a junk yard case.  The defendant is conducting the enterprise without the license required by a resolution of the township adopted in 1945.  The township seeks to enjoin the operation, not only as a violation of the ordinance, but also as a public nuisance.  The circuit court dismissed the bill on its merits and the controversy is before us on general appeal.

This is the second appeal involving this matter.  In *Township of Garfield* v. *Young,* 340 Mich 616, we held that the ordinance in question, providing for the licensing of junk yards operated within the township,* was constitutional under the authority of *People* v. *Gottlieb,* 337 Mich 276.  We said that it was not an unconstitutional delegation of legislative power for the ordinance to require that the petition for a license be accompanied by written consents from a percentage of certain adjoining property owners. Those questions are now foreclosed.  The case was then sent back for trial on the merits to determine whether there was sufficient factual basis for the issuance of an injunction, restraining the defendant from further operation of his business.

The court below found the resolution invalid and illegal because of defects in its enactment.  It found, further, after taking testimony and viewing the premises, that this was no public nuisance, that there was "no showing of any health problem or

---

* Enacted by the township under PA 1929, No 12, as amended by PA 1935, No 34 (CL 1948, § 445.451 *et seq.* [Stat Ann § 19.731 *et seq.*]).

other facts in the proofs which would justify the court in issuing a writ of injunction." We will first consider the matter of the alleged nuisance.

The business of the defendant—that of operating a junk yard—is not a public nuisance per se at the common law. *Township of Warren* v. *Raymond,* 291 Mich 426, and cases there cited. No attempt is made to denominate this activity a nuisance per se under any statute, or the resolution before us. We note that a penalty, only, is imposed for failure to comply with its provisions. The plaintiff township, however, would have us enjoin the violation on the theory that the resolution regulates a business affecting public health, welfare and morals, and therefore its violation is a nuisance per se. In support thereof, certain of the cases collected in 166 ALR 659–666 are cited to us. The law of this jurisdiction does not, however, support this theory. Our holding in *Village of St. Johns* v. *McFarlan,* 33 Mich 72 (20 Am Rep 671), expresses the Michigan, and we think, upon principle, the preferable, view:

"A court in chancery has no jurisdiction to restrain the threatened violation of a village ordinance, unless the act threatened to be done, if carried out, would be a nuisance. If it were otherwise, the court might be called upon in all classes of cases to restrain the doing of acts prohibited by statute. *Mayor of Hudson* v. *Thorne,* 7 Paige Ch (NY) 261; *Attorney General* v. *Utica Insurance Co.,* 2 Johns Ch (NY) 370.

"The erection of a wooden building within the limits of a city or village is not in and of itself a nuisance. Neither does the fact that the erection of such is prohibited by ordinance make it a nuisance. If this were so, then the doing of any act prohibited by law would, upon the same reasoning, be a nuisance. The act, if prohibited, would be illegal; but something more than mere illegality is required to give this court jurisdiction. It was, how-

.ever, insisted that the erection of a wooden build-
ing in a thickly settled portion of a village increases
the danger in case of fire, and thereby injures adjoin-
ing property.  There are, however, many kinds of
trades and occupations, some of them prohibited by
law, which, when carried on, equally tend to injure
.adjoining property, yet no one would contend that a
.court of chancery should interfere by injunction."

See, also, *Conway* v. *Gampel,* 235 Mich 511.

The cases of *Portage Township* v. *Full Salvation
Union,* 318 Mich 693; and *People* v. *Kelly,* 295 Mich
.632, are distinguishable, the Court pointing out in
the former case (p 703) that "under the specific
terms of the statute the use made by defendants of
the premises in question, and the buildings erected,
in violation of the terms of the ordinance, consti-
tute a nuisance per se.  Such result was recognized
by the Court in *People* v. *Kelly,* 295 Mich 632."

Apart from statute, then, is the case before us a
proper case for the issuance of injunction at the
prayer of the public authorities upon the theory that
.a public nuisance must be restrained?  If, of course,
we have in truth a public nuisance, the fact that it is
also a criminal act will not stay the chancellor's hand.
.Story, Commentaries on Equity Jurisprudence
(Randall, 3d ed 1920), §§ 921, 924; 6 McQuillin, Mu-
nicipal Corporations (3d ed), § 24.58; Prosser, Torts,
.§ 71.  We are not here called upon to grasp the
thorny nettle.  We need not decide the extent to
which the chancellor may displace the jury in a
.criminal proceeding.  Mack, The Revival of Crim-
inal Equity, 16 Harv L Rev 389.

Without valid and controlling statute, then, we are
remitted to the question of whether or not there is,
in fact, a public nuisance.

"No better definition of a public nuisance has been
.suggested than that of an act or omission 'which ob-
structs or causes inconvenience or damage to the

.public in the exercise of rights common to all Her Majesty's subjects.' The term comprehends a miscellaneous and diversified group of minor criminal offenses, based on some interference with the interests of the community, or the comfort or convenience of the general public. * * *

"To be considered public, the nuisance must affect an interest common to the general public, rather than peculiar to one individual, or several. * * * It. is not necessary, however, that the entire community be affected, so long as the nuisance will interfere with those who come in contact with it in the exercise of a public right." (Prosser, *supra,* § 71, pp 401, 402.)

As such, the activity must be harmful to the public health, *Township of Kalamazoo* v. *Lee,* 228 Mich 117; or create an interference in the use of a way of travel, *Attorney General, ex rel. Muskegon Booming Company,* v. *Evart Booming Company,* 34 Mich 462; or affect public morals, *State, ex rel. Wayne Prosecuting Attorney,* v. *Martin,* 314 Mich 317; or prevent the public from the peaceful use of their land and the public streets, *City of Grand Rapids* v. *Weiden,* 97 Mich 82. The question in each case is one of fact, and in each case we must consider the facts peculiar to that particular case. *People* v. *Carpenter,* 1 Mich 273; *Crippen* v. *People,* 8 Mich 117. . What, here, are the facts controlling as to nuisance, the facts peculiar to this particular case? Defendant's property is an unrestricted parcel in Garfield township. It is located on Barlow road, immediately north of the Cranston mink farm and about a mile from the city dump, which is also on Barlow. One adjoining owner runs a trucking and bulldozing business from his home. Two junk yards, in addition to defendant's, are in the immediate vicinity. A tractor repair shop is located nearby. Several residences are found in the area, some of which are used in connection with the businesses

mentioned.  We have here, then, no intrusion of a
noxious and objectionable business into an area de-
voted to the quiet of residential pursuits.   Testi-
mony was offered respecting smoke, noise, and odors.
Some such there unquestionably was.   The defend-
ant admitted that smoke would result from the burn-
ing of automobile upholstery but stated that such
burning could be accomplished at night, or other-
wise.   (This is to prevent the sooting-up of wash-
ings on the lines.)   The operator of the nearby mink
farm claimed that he lost a large number of mink
during the construction of the metal fence surround-
ing the defendant's property and a lesser number in
the subsequent years due to the noises from the de-
fendant's operations.   ("Mink are somewhat sensi-
tive to noise and that is my primary reason for not
wanting Sol Young there, and the property.")   Fur-
ther, on the matter of smoke (and odors) the oper-
ator of the nearby junk yard, Mr. Ginsburg, testify-
ing for the plaintiff, stated that he could not tell
whether or not smoke and odor emanated from the
defendant's yard because "so much smell around
there by my yard that I don't know which yard it
comes from."   The township supervisor admitted
that "we have had a lot of complaints on the Whitney
yard too."   (This is one of the other junk yards
nearby.)

There was testimony of rat infestation in the area,
but it was far from persuasive that defendant was
responsible for this condition.

Finally, testimony was offered relative to the de-
preciation of property values in the area since the
commencement of the defendant's operations, but it
is not convincing in view of the predominant use
of property in the area.   Under *Plassey* v. *S. Loewen-
stein & Son,* 330 Mich 525, 530, the "mere fact that
doing so may lessen the value of other property in

the locality does not constitute the erection of the building a nuisance."

Upon all of the evidence, including the conduct of defendant's business, the character of the area, and the nature of the operations carried on therein, the trial court found, in brief,

"that plaintiff's claim that the defendant was committing a public nuisance was not borne out by the evidence, and that those whose complaints caused the township board to act in seeking the injunction, were either at the time of the trial, or had been, engaged in commercial activities, such as the raising of mink, the raising of foxes, and the operation of a trucking business, and that there was no showing of any public health problem or other facts in the proofs which would justify the court in issuing a writ of injunction."

With these conclusions, after a complete review of the testimony, we are in full accord. There is no need, therefore, to consider the other questions raised by the parties.

Affirmed. Costs to appellee.

DETHMERS, C. J., and SHARPE, EDWARDS, KELLY, CARR, and BLACK, JJ., concurred.

VOELKER, J., took no part in the decision of this case.