### BLOSS v. PARIS TOWNSHIP.
#### OPINION OF THE COURT.

1. NUISANCE—PUBLIC NUISANCE—DEFINITION—INDECENT EXHIBITIONS.

   An act that interferes with the public health or with public morals, as in the case of indecent exhibitions, is a public nuisance.

2. SAME—PUBLIC NUISANCE—PROJECTION OF PICTURES VISIBLE FROM PUBLIC STREETS AND PRIVATE PROPERTY.

   The projection of pictures not fit for children to see, onto places within their view from public streets, from residential properties, and from private homes, is a public nuisance.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 39 Am Jur, Nuisances § 8.
[3] 16 Am Jur 2d, Constitutional Law §§ 341, 345.
[4] 39 Am Jur, Nuisances §§ 8, 123, 124.
[5] 39 Am Jur, Nuisances §§ 123, 124, 178.
[6, 8] 4 Am Jur 2d, Amusements and Exhibitions § 37; 39 Am Jur, Nuisances § 8.
   Open-air motion-picture theater or other outdoor dramatic or musical entertainment as a nuisance. 144 ALR 1261.
[7] 39 Am Jur, Nuisances § 153.

3. CONSTITUTIONAL LAW—GUARANTIES.
The right to free speech and writing is not one to force speech or writing on an unwilling audience or readers, and the constitutional guaranty does not authorize a citizen to appropriate to his own use public or private property in a community for the purpose of exercising that guaranty.

4. NUISANCE—PUBLIC NUISANCE—CONSTITUTIONAL LAW.
Pictures dwelling on the subjects of sex and the human anatomy, shown on screen of drive-in theater in such a position that they were visible on public streets and residential properties, and so that they could be and were seen by children do not come within the constitutional protections of freedom of speech and of the press, and constitute a nuisance for which an injunction will lie (US Const, Ams 1, 14).

5. SAME—PUBLIC NUISANCE—INJUNCTION—CRIMINAL ACT.
A public nuisance may also be a criminal act and this will not prevent it from being enjoined.

DISSENTING OPINION.

SOURIS, J.

6. NUISANCE—DRIVE-IN THEATER.
*A drive-in theater is a legitimate business and not a nuisance per se.*

7. SAME—LEGITIMATE BUSINESS—INJUNCTION.
*A legitimate business which is operated in such a way that it constitutes a nuisance can be enjoined.*

8. SAME—DRIVE-IN THEATER—REGULATION.
*Drive-in theater which is a nuisance by reason of method of its operation requires remedy of regulation, rather than abatement, where the business can be operated in such a way as not to constitute a nuisance.*

Appeal from Kent, Searl (Fred N.), J. Submitted June 8, 1967. (Calendar No. 7, Docket No. 51,446.) Decided April 1, 1968. Rehearing denied June 10, 1968.

Action by Floyd G. Bloss against Paris Township and its officers to enjoin interference with his operation of the Stardust theater. Defendants counterclaimed seeking an injunction against the operation of the theater. Judgment for defendants enjoining

the operation of the theater. Plaintiff appeals. Supreme Court granted application to bypass the Court of Appeals. Affirmed.

*Himelstein & Ward* (*Edward M. Sharpe, John W. Piggott,* and *Theodore R. Pixley, Jr.,* of counsel, for plaintiff on application for rehearing), for plaintiff.

*Vander Veen, Freihofer & Cook,* for defendants.

DETHMERS, C. J.  Plaintiff occupied, as lessee, certain land on which he operated an outdoor drive-in theater in defendant township. The individual defendants are officers and agents of that township. Plaintiff had operated the theater in the years 1963 and 1964 under license obtained from the township. Plaintiff's application for renewal of the license for the period from May 1, 1965, to May 1, 1966, was denied by the township.

This suit was brought to enjoin interference with plaintiff's operation of the theater and enforcement against him and his theater of an ordinance or so-called township resolution for licensing and regulating public amusement places. Defendants filed an answer and counterclaim praying that plaintiff be enjoined from operating the theater.

The circuit court, after multiple hearings on orders to show cause, complaint, counterclaim, et cetera, finally found for defendants, dismissed plaintiff's complaint and caused an injunction to issue against him as defendants prayed.

After appeal taken to the Court of Appeals, denial there of stay of proceedings, and other actions occurring in that Court which did not completely dispose of the case, this Court granted plaintiff's motion to bypass the Court of Appeals but denied his application to dissolve the trial court's injunction. The

case is now before us on the merits. The controlling question is whether the trial court properly enjoined the operation by plaintiff of what it found to be a "public nuisance".

There is ample evidence to support the trial court's finding that the physical layout, construction and arrangement of the facilities and screen of plaintiff's moving picture business on his leased premises were such that the pictures shown on the screen were clearly visible from a public street and residential properties adjacent to plaintiff's business location and that they could be and were seen by children from such locations. To quote from the trial court's opinion:

"The screen upon which these films are shown is 35 feet by 70 feet in dimension, and is 54 feet above the ground. The pictures upon it are clearly visible in the public streets which abut the theater property, in houses, and in front and rear yards of the homes which adjoin the streets. Young people and children in their homes, upon their lawns and yards, and in the public streets, can witness these films, and young people from other areas who, of course, become acquainted with the nature of the films being shown, come to these points of vantage to view the pictures."

This the evidence supports.

The pictures, as indicated by the record, dwelt on the subjects of sex and the human anatomy. Plaintiff admitted on the witness stand and proclaimed in his newspaper advertising that the moving pictures shown were not fit to be seen by children below 18 years of age. He testified that he could not make money on his theater operation by showing so-called family-type pictures or others of a kind properly to be shown to younger persons below age 18 and that, therefore, he was showing the kind he did and that the defendants had no right, authority, or business

trying to tell him what type of pictures he could show.

What is a public nuisance? Joyce, Law of Nuisances, § 7, p 15, defines a public nuisance, *inter alia,* as an act which offends public decency. Cited to section 6, p 13, is the case of *Hayden* v. *Tucker,* 37 Mo 214, in which it was held that the keeping and standing of jacks and stallions within the immediate view of a private dwelling and a public highway is a nuisance which equity will enjoin as "a disgusting annoyance perpetually bringing the blush of shame to modesty and innocence." The factual difference between the *Hayden* and the instant case, in that there involved was a display of equine and here pictures of the human frame, is not a distinction calling for a different conclusion as to the nuisance question.

The trial court in the case at bar quoted from Prosser in his work on Torts, Public Nuisance, § 89, p 605 to the effect that a public nuisance is an act that interferes "with the public health, \* \* \* with public morals, \* \* \* as in the case of indecent exhibitions," et cetera. The Prosser passage was quoted in *Township of Garfield* v. *Young,* 348 Mich 337, 342, after which this Court defined a public nuisance as including an activity that affects public morals.

It is our judgment that the foisting off of a display of pictures not fit for children to see onto places within their view on public streets, on residential properties and in private homes, without the consent of the property owners and the parents, is a public nuisance.

Plaintiff contends that the actions of the township and court below constitute censorship and a deprivation of his rights, under the First and Fourteenth Amendments, of freedom of speech and of

the press.   Plaintiff cites *Jacobellis* v. *Ohio* (1963),
378 US 184 (84A S Ct 1676; 12 L ed 2d 793), for the
proposition that any form of censorship is an assault
upon freedom of press and an infringement of free-
dom.   There follows reliance on *Butler* v. *Michigan*
(1956), 352 US 380 (77 S Ct 524; 1 L ed 2d 412),
in which a statute making it a misdemeanor to sell or
make available to the general reading public any
book containing obscene language "tending to the
corruption of the morals of youth" was held uncon-
stitutional as violative of the Fourteenth Amend-
ment's due process clause.   It will be observed, how-
ever, that in that case the court said that the legis-
lation was not reasonably restricted to the evil with
which it was said to deal, namely, corruption of the
morals of youth, but, instead, it in effect reduced
the adult population of Michigan to reading only
what is fit for children.   The court seems to suggest
that prosecutions for that purpose might better be
limited to cases of violations of another Michigan
statute which was specifically designed to protect its
children against obscene matter by prohibiting the
giving of such matter to minor children.   The trial
court in the instant case quoted from plaintiff's
favorite case, *Jacobellis, supra,* the following (p
195) :

   " 'We recognize the legitimate and indeed exigent
interest of States and localities throughout the Na-
tion in preventing the dissemination of material
deemed harmful to children.   But that interest does
not justify a total suppression of such material, the
effect of which would be to "reduce the adult popula-
tion to reading only what is fit for children."  *Butler*
v. *Michigan,* 352 US 380, 383.   State and local author-
ities might well consider whether their objectives in
this area would be better served by laws aimed
specifically at preventing distribution of objection-
able material to children, rather than at totally pro-

hibiting its dissemination. Since the present conviction is based upon exhibition of the film to the public at large and not upon its exhibition to children, the judgment must be reviewed under the strict standard applicable in determining the scope of the expression that is protected by the Constitution.' "

The trial court followed this Jacobellisan quotation with its own language as follows:

"In a course which the court believes is consistent with this language, it has not endeavored to determine whether the films in question may properly be shown in an enclosed theater, open only to adults, and in such manner that they cannot be seen in the public streets, in homes, and open spaces by children."

The trial court also quoted from 16 CJS, Constitutional Law, § 213, p 1108:

" 'The constitutional provisions do not add anything to the rights of one citizen as against another and do not inhibit action by individuals with respect to their property. So the right to speak freely does not sanction a trespass, and does not imply the right to make a speech or distribute literature on another's private premises without his permission. In other words, the right to free speech and writing is not one to force speech or writing on an unwilling audience or readers, and the constitutional guaranty does not authorize a citizen to appropriate to his own use public or private property in a community for the purpose of exercising that guaranty. The rights pertain to the individual rather than to gainful activities in which the individual may engage, and any unreasonable extension of such rights into fields which include more than personal freedom of the individual may conflict with property rights of others and with the safety of the public.' "

We are satisfied that the course of action pursued by plaintiff in imposing a public nuisance onto those

on public streets or on their own property, particularly as relates to the children of parents who are unwilling to have this done, does not come within the First and Fourteenth Amendment protections of freedom of speech and of the press.

In *Township of Garfield* v. *Young, supra,* p 342, we said, "If, of course, we have in truth a public nuisance, the fact that it is also a criminal act will not stay the chancellor's hand", thus indicating that where the facts disclosed by the record show the existence of a public nuisance an injunction would lie.

Questions of the constitutionality of the township licensing ordinance, admissibility into evidence of certain film, and others raised by plaintiff need not be considered here in view of our holding that plaintiff did maintain a public nuisance properly enjoined by the court below.

Judgment of the trial court and its injunction affirmed, with costs to defendants.

KELLY, BLACK, T. M. KAVANAGH, O'HARA, ADAMS, and BRENNAN, JJ., concurred with DETHMERS, C. J.

SOURIS, J. (*dissenting*). The trial chancellor found that plaintiff's drive-in theater, as operated by him, constituted a nuisance. The injunction granted by the chancellor permanently enjoins plaintiff from operating his theater in any manner; it does not enjoin plaintiff only from operating the theater in the manner which was found to constitute a nuisance. The Chief Justice has written to affirm. I dissent.

We have held that a drive-in theater is a legitimate business enterprise. *Bzovi* v. *City of Livonia* (1957), 350 Mich 489, 492. Accordingly, a drive-in theater cannot be held to be a nuisance *per se* subject to judicial abatement by injunction. If, on the other

hand, a legitimate business is operated in such a way that such operation constitutes a nuisance, such as was found by the chancellor in this case, then operation of the business *in that manner* properly may be enjoined. In short, the extraordinary writ of injunction may be issued to regulate the operation of a legitimate business to the end that its operation does not constitute a nuisance, but it may not be issued to ban the proper conduct of such a business if the business can be conducted without committing a nuisance. See *Adams* v. *Kalamazoo Ice & Fuel Co.* (1928), 245 Mich 261, 264, where we said:

"Plaintiffs concede that an ice distributing station is not a nuisance *per se,* but contend that this one is a nuisance *per accidens.* If the ice station is a nuisance by reason of method of its operation, then regulation, if adequate, and not abatement, is the remedy."

Violation of a properly limited injunction, aimed at the nuisance found by the chancellor, would subject plaintiff to the contempt power of the Court. I am not persuaded by this record that such a limited injunction, enforced by the Court's power to find its violation a contempt, would not be an adequate remedy to protect the public in defendant township. In any event, I know of no warrant in law that justifies injunctive relief so broad that it bans totally the operation of a legitimate business even if conducted in such manner that no nuisance is committed.

For the foregoing reasons, I would reverse and remand for modification of the injunction in accordance with this opinion. Furthermore, I would award plaintiff his costs.