[Civ. No. 38114. Second Dist., Div. Two. Mar. 2, 1972.]

JOHN HARMER et al., Plaintiffs and Appellants, v.
TONYLYN PRODUCTIONS, INC., et al., Defendants and Respondents.

**COUNSEL**

James J. Clancy for Plaintiffs and Appellants.

Stanley Fleishman and John H. Weston for Defendants and Respondents.

**OPINION**

**ROTH, P. J.**—This appeal is from a judgment based upon a ruling sustaining a demurrer to the first amended complaint without leave to amend. Plaintiffs, six individuals, seek an injunction to prevent the exhibition in a closed theater of a motion picture "Without a Stitch" (film) and to abate it as a public nuisance.[1]

The complaint is directed against defendants (Tonylyn Productions, Loew's California Theatres, Harris, Sher and four Does.) The film involved is a singularly inartful cinematic effort, which, if the factual allegations of the complaint are to be taken as true, as they must be, depicts sexual ac-

---

[1] The complaint also purported to state a class action. In view of our disposition of the substantive issue, it is unnecessary to decide whether a class action was properly alleged.

tivity including, but not limited to, sexual intercourse, lesbianism and sodomy.

The complaint is premised on the theories of public nuisance and the provisions of the Red Light Abatement Law (Pen. Code, § 11225 et seq.).

We conclude that the judgment must be affirmed.

■ Plaintiffs do not allege the damages special to themselves required to show that the nuisance, assuming it is such, is a *public* nuisance to enable them as private citizens to enjoin or abate it within the meaning of Civil Code section 3480. Further, we find that the provisions of the Red Light Abatement Law do not extend to motion pictures.

Section 3480 of the Civil Code defines a public nuisance as follows: "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."[2]

The film involved was shown only in a closed theatre. Only those persons could view it who had paid the admission price and who had entered the theatre. Thus, only those members of the community were exposed to the film who voluntarily chose to see it. This is not a case where the community as a whole is forced to submit involuntarily to vile odors (*Fisher* v. *Zumwalt*, 128 Cal. 493 [61 P. 82]) or air pollution (*Wade* v. *Campbell*, 200 Cal.App.2d 54 [19 Cal.Rptr. 173, 92 A.L.R.2d 966]) or to the unwelcome presence of animals (*Hayden* v. *Tucker*, 37 Mo. 214). In the statute's terms, the alleged nuisance at bench did not " . . . affect[s] *at the same time* an *entire* community or neighborhood, . . ." (Civ. Code, § 3480) (italics added).

At bench, only that portion of the public could see the film which voluntarily chose to enter the theatre. The nuisance was not one which is inflicted or imposed on the public.

■ The Red Light Abatement Law, originally enacted to make houses of prostitution a private as well as public nuisance, was amended in 1969 to include premises used for illegal gambling.[3] The Red Light Abatement

---

[2]Section 3479 in pertinent part defines nuisance as: "Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, . . . is a nuisance."

[3]"Every building or place used for the purpose of illegal gambling as defined by state law or local ordinance, lewdness, assignation, or prostitution, and every building or place in or upon which acts of illegal gambling as defined by state law or local ordinance, lewdness, assignation, or prostitution, are held or occur, is a nuisance which shall be enjoined, abated and prevented, whether it is a public or private nuisance."

Law has been held by judicial construction to apply to lewd live stage shows and exhibitions. It has not been similarly extended to apply to depictions in closed theatres of those same acts by still or motion picture, or drawings or any type of exhibits which are limited to closed theatres. If the Legislature had desired or intended by section 11225 of the Penal Code to regulate the showing of pornographic films, pictures or drawings, such subject matter could have been included in section 11225 when it was recently amended in 1969, as it did when it chose to enumerate "illegal gambling as defined by state law or local ordinance" in that section of the Penal Code.

The judgment is affirmed.

Fleming, J., concurred.

**HERNDON, J.**—I dissent.

In the majority opinion the motion picture "Without A Stitch" is very briefly described as "a singularly inartful cinematic effort, which, if the factual allegations of the complaint are to be taken as true, as they must be, depicts sexual activity including, but not limited to, sexual intercourse, lesbianism and sodomy."

Incriminating though it may be, the majority's brief description of the film is euphemistic. The English language does not provide adjectives sufficient to describe the utter rottenness of this sordid product of sub-human depravity and greed that portrays every known form of sexual perversion.

The motion picture involved in this case was accurately described by the Court of Common Pleas of Lucas County, Ohio, in a case entitled *"State* ex rel. *Ewing* v. *'Without A Stitch'."* As a basis for its conclusion of law that the motion picture was hard-core pornography, and for its judgment permanently enjoining the exhibition of the film in the State of Ohio, the court made findings in which it described the motion picture as follows:

"The movie specifically showed a simulated sexual relation between a seventeen and one-half year old girl and a treating physician; an attempted act of sexual intercourse with a young man which was incomplete. That the physician's sexual intercourse as well as suggested cunnilingus and oral sodomy was purported to be a therapeutic treatment. That through the media of a holiday trip with background travelogue type photographs, the sexual morals of the various countries were attempted to be shown through the means of various normal, abnormal, and unlawful sexual approaches. That these involved an act of anal copulation involving the subject girl and

a male companion as well as vaginal copulation between the subject girl and another male; sadistic-masochistic, sexual relationships between this subject girl and an adult male companion; the display of a dildo to this girl; this girl nude with a nude male and another nude female with the subject girl's sexual parts over the male's genitals and the other female's sexual parts over the male's face, and the girls kissing each other; that this subject girl was also induced to make and participate in the making of a pornographic movie. There was also a scene suggesting lesbian activity.

"That in addition to the pornography there were a number of scenes involving total or partial nudity resulting in visual creation of scenes leading to acts of male-female copulation, cunnilingus, sodomy, fellatio, lesbian relations and other sex play with the inference that these were a benefit, therapeutically, to her alleged sexual frigidity."

The judgment of the Court of Common Pleas permanently enjoining the exhibition of the film in the State of Ohio was affirmed by the Court of Appeals of Ohio in *State* ex rel. *Ewing* v. *"Without a Stitch,"* 28 Ohio App.2d 107 [57 Ohio Ops.2d 184, 276 N.E.2d 655]. In that excellent decision the court reviews all of the recent decisions of the United States Supreme Court on the subject of obscenity including *Roth* v. *United States,* 354 U.S. 476 [1 L.Ed.2d 1498, 77 S.Ct. 1304]; *Jacobellis* v. *Ohio,* 378 U.S. 184 [12 L.Ed.2d 793, 84 S.Ct. 1676]; *Ginzburg* v. *United States,* 383 U.S. 463 [16 L.Ed.2d 31, 86 S.Ct. 942]; *Stanley* v. *Georgia,* 394 U.S. 557 [22 L.Ed.2d 542, 89 S.Ct. 1243]; *United States* v. *Reidel,* 402 U.S. 351 [28 L.Ed.2d 813, 91 S.Ct. 1410], and *United States* v. *Thirty-Seven Photographs,* 402 U.S. 363 [28 L.Ed.2d 822, 91 S.Ct. 1400]. Following that review the Ohio court declares its conclusion with respect to the film "Without A Stitch" as follows: "By any test, medium-core, hard-core, as if res ipsa loquitur, obscenity per se, patently obscene or screaming obscenity, the film was obscene." (P. 658.)

*The Film "Without A Stitch" Is Hard-Core Pornography as Defined in Section 311, Subdivision (a), of the Penal Code and Is Beyond Constitutional Protection.*

Subdivision (a) of section 311 of the California Penal Code provides as follows: "As used in this chapter: (a) 'Obscene matter' means matter, taken as a whole, the predominant appeal of which to the average person, applying contemporary standards, is to prurient interest, i.e., a shameful or morbid interest in nudity, sex, or excretion; and is matter which taken as a whole goes substantially beyond customary limits of candor in description or representation of such matters; and is matter which taken as a whole is utterly without redeeming social importance."

In *Landau* v. *Fording,* 245 Cal.App.2d 820 [54 Cal.Rptr. 177], a hearing was denied by the California Supreme Court and the judgment of the Court of Appeal was affirmed by the United States Supreme Court after the granting of certiorari (388 U.S. 456 [18 L.Ed.2d 1317, 87 S.Ct. 2109]). The well-considered opinion authored by Justice Wakefield Taylor for the Court of Appeal in that case affirms a judgment of the trial court which held that a film entitled "Un Chant d'Amour" was hard-core pornography within the meaning of Penal Code section 311, subdivision (a). Since that decision cites and discusses all of the most pertinent decisions of the United States Supreme Court, I adopt its content by reference in the interest of economy.

With respect to the film involved in *Landau* v. *Fording, supra,* 245 Cal.App.2d 820, the court commented at page 829: "In our opinion, the production does nothing more than depict a number of disjointed scenes treating sex in a shocking, morbid and shameful manner and is devoid of artistic merit." A comparison of the film described in *Landau* with the film "Without A Stitch" involved in the case at bench immediately leads to the conclusion that we are here dealing with a product even more shocking, morbid and shameful, and one which possesses no semblance of any redeeming attribute.

> *The Exhibition of the Pornographic Motion Picture*
> *"Without A Stitch" Involved the 'Commission of an*
> *Infamous Crime and Created a Public Nuisance.*

Obscene or indecent exhibitions of such a flagrant nature as to shock the normal and prevailing sense of decency were regarded as public nuisances and were indictable under the common law. In Perkins on Criminal Law (1st ed. 1957) Foundation Press, Professor Perkins states at page 336: "Obscene or indecent exhibitions of a nature to shock the public sense of decency are also public nuisances and indictable at common law. This label includes not only obscene and indecent theatrical performances or 'side shows,' but other disgusting practices such as letting a stallion to mares in the streets or some other public place . . . ."

The above stated principles were recently applied in *Bloss* v. *Paris Township,* 380 Mich. 466 [157 N.W.2d 260], wherein the Supreme Court of Michigan held that the operation of an outdoor drive-in theatre showing motion pictures which "dwell on the subject of sex and the human anatomy" constituted a public nuisance. The following from the opinion at pages 261-262 is apposite: "What is a public nuisance? Joyce, Law of Nuisances, § 7, p. 15, defines a public nuisance, inter alia, as an act which offends

public decency. Cited to § 6, p. 13, is the case of Hayden v. Tucker, 37 Mo. 214, in which it was held that the keeping and standing of jacks and stallions within the immediate view of a private dwelling and a public highway is a nuisance which equity will enjoin as a 'disgusting annoyance perpetually bringing the blush of shame to modesty and innocence.' The factual difference between the Hayden and the instant case, is that there involved was a display of equine and here pictures of the human frame, is not a distinction calling for a different conclusion as to the nuisance question."

In *Cactus Corporation* v. *State* ex rel. *Murphy*, 14 Ariz.App. 38 [480 P.2d 375], the Court of Appeals of Arizona affirmed the judgment of the trial court which permanently enjoined the exhibition of a motion picture film entitled "Lysistrata" or any other motion picture film of the same character on the ground that such activity would constitute a public nuisance as defined by the Arizona statute which is substantially identical to section 3479 of the California Civil Code. At page 378 the appellate court stated: "In the case at bar, there is no necessity for a finding of damage in that the activity in question is a public nuisance per se, which produces such annoyance, inconvenience and discomfort that the law presumes damage. City of Phoenix v. Johnson, 51 Ariz. 115, 75 P.2d 30 (1938); Engle v. Scott, *supra* [57 Ariz. 383 (114 P.2d 236)]. Such nuisances are *malum in se*. Even if it is assumed *arguendo* that the activity here is a nuisance *per accidens,* the burden of showing damage has been met by plaintiff . . . .

"The defendant's third contention is that the trial court's rulings that the activity here was a public nuisance and that it should be abated by injunction were erroneous. We do not agree. A mere reading of the statutes defining public nuisances, A.R.S. § 13-601 (1956) in light of the facts before us, clearly indicates the correctness of the trial court's characterization of the activity *sub judice* as that of a public nuisance. . . ."

Similar statements of the law are to be found in the recent decisions of several others of the highest state courts of the nation. On March 4, 1971, the Supreme Court of Georgia in a unanimous decision affirmed a judgment holding that the motion picture film "I Am Curious (Yellow)" was obscene and a public nuisance; its further exhibition was enjoined and all copies of the film in the possession of defendants were ordered seized. (*Evans Theatre Corporation* v. *Slaton,* 227 Ga. 377 [180 S.E.2d 712].)

In *State* ex rel. *Keating* v. *Vixen,* 27 Ohio St.2d 278 [56 Ohio Ops.2d 165, 272 N.E.2d 137], the Supreme Court of Ohio affirmed the judgment

of the trial court which declared the exhibition of the film there involved to be a nuisance and enjoined further exhibition of the film in that state. The action to abate the nuisance was brought by a citizen under the authority of a provision of the Ohio Revised Code.

In *Weis* v. *Superior Court,* 30 Cal.App. 730 [159 P. 464], the district attorney had commenced a civil action under Code of Civil Procedure section 731 to abate the theatrical performance on the ground that it was a public nuisance. The complaint alleged that under a concession granted by the Panama-California International Exhibition, the defendant was conducting upon the exposition grounds an entertainment known as the "Sultan's Harem" in which certain women in the presence of the general public exposed their naked person and private parts. It was alleged that the performance was indecent and offensive to the senses and constituted a public nuisance. In denying the defendant's application for a writ of prohibition, the appellate court held that the action was properly brought and at page 732 commented as follows: "While the acts here complained of clearly constitute a crime, *they also constitute a nuisance within the meaning of section 3479 of the Civil Code,* which defines a nuisance as 'Anything which is . . . indecent or offensive to the senses, . . . so as to interfere with the comfortable enjoyment of life or property . . . .' (Italics added.) And section 3480 of the same code defines a public nuisance as 'one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal.' Mr. Joyce in his work on Nuisances (section 409) says: 'A disorderly and disreputable theater may be enjoined, although a common nuisance.' To the same effect is Wood on Nuisances (section 68), where it is said: 'A public exhibition of any kind that tends to the corruption of morals, to a disturbance of the peace, or of the general good order and welfare of society, is a public nuisance. Under this head are included . . . obscene pictures, and any and all exhibitions, the natural tendency of which is to pander to vicious . . . and disorderly members of society.' "

The decision in *Weis* v. *Superior Court, supra,* 30 Cal.App. 730, was cited with approval by the California Supreme Court in *People* v. *Lim,* 18 Cal.2d 872 [118 P.2d 472]. In the latter decision at page 879 it is stated: "Similarly, in *Weis* v. *Superior Court,* 30 Cal.App. 730 [159 Pac. 464], it was held that the District Attorney of San Diego County was authorized, under Code of Civil Procedure section 731, to enjoin the performance of a public exhibition which was shown to have been indecent, and thus within the statutory definition of public nuisance in Civil Code, section 3479 . . . . The courts have thus refused to grant injunctions on

behalf of the state *except* where the objectionable activity can be brought within the terms of the statutory definition of public nuisance." (Italics added.)

*The Complaint Alleges Facts Sufficient to Establish That the Continued Exhibition of the Pornographic Film Constituted a Nuisance Specially Injurious to Appellants.*

The following allegations of the complaint are sufficient to satisfy pleading requirements with respect to the element of special injury which is essential to establish appellants' capacity to maintain the action under Civil Code section 3493. In paragraphs 12 and 13 of the first amended complaint, it is alleged as follows: "12. That special damages have been and will be suffered from the showing of said film by plaintiffs and by the classes they represent in that: (a) they have been significantly offended, outraged, and caused emotional distress by the existence and showing of an obscene movie to the public, and in close proximity to the area where they reside or work. (b) they have been subjected to illegal, immoral, corrupting and degrading influences by the exhibition of obscenity to the public in close proximity to the area where they reside or work. (c) they have been subjected to the direct and/or indirect consequences of the exhibition to the public of obscenity in close proximity to the area where they reside or work, which include (1) The attraction of criminal elements into the area, (2) The decrease in value of real property due to the driving away of moral persons and the attraction of undesirable persons, (3) The erosion of the public morality of the community leading to losses in peace, happiness, and moral order, (4) The higher probability of an increase in sexual promiscuity, venereal disease and illegitimate births among the members of the community.

"13. That there exists a justly apprehended danger to plaintiffs and the class(es) they represent from the exhibition of the aforementioned obscenity to the public in close proximity to where they reside and work, in the increased danger of victimization by crime, disease and immorality, and for the reasons and facts stated in 12 above."

It is well settled that the special injury which authorizes a private person to maintain an action to abate a nuisance pursuant to section 731 of the Code of Civil Procedure and section 3493 of the Civil Code may arise from the proximity of the source of the nuisance to the residence or the place of work of the complaining citizen. The pertinent provision of section 731 of the Code of Civil Procedure is as follows: "An action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by a nuisance, as the same is defined in

section thirty-four hundred and seventy-nine of the Civil Code, and by the judgment in such action the nuisance may be enjoined or abated as well as damages recovered therefor."

In *Fisher* v. *Zumwalt*, 128 Cal. 493 [61 P. 82], the Supreme Court of California affirmed a judgment in favor of the plaintiff who had brought the action to abate a nuisance created by the operator of the creamery who had maintained his premises "in such manner as to throw off vile and noxious odors and gases, very offensive to the senses and dangerous to the health of plaintiff and his family, and all others living in the immediate vicinity." (P. 495.)

Zumwalt, the appealing defendant, contended "that it is a public nuisance, and that it affects all the people of the neighborhood, and that the nuisance is not especially injurious to plaintiff; that the damage is not different in kind or character from that suffered by the general public, and that for this reason the plaintiff in his private capacity cannot maintain the action." (P. 495.)

In rejecting the defendant's contention and affirming the judgment, the Supreme Court preceded its quotation of the first sentence of section 731 with the following statement: "Because the nuisance affects a great number of persons in the same way, it cannot conclusively be said that it is a public nuisance and nothing more. The fact that a nuisance is public does not deprive the individual of his action in cases where, as to him, it is private and obstructs the free use and enjoyment of his private property. (*Blanc* v. *Klumpke*, 29 Cal. [156 at p. 160]; *Yolo County* v. *Sacramento*, 36 Cal. [193 at p. 195].)" (P. 496.)

In *Johnson* v. *V. D. Reduction Co.*, 175 Cal. 63 [164 P. 1119], the Supreme Court followed the precedent of *Fisher* v. *Zumwalt, supra*, in a factually similar case and again affirmed the proposition that the fact that a nuisance giving rise to offensive odors and smells is of a public nature does not deprive an individual plaintiff of the right to maintain an action for its abatement where the nuisance was of such a character that it interfered with or obstructed the use and enjoyment of the complainant's private property. The court further held that the 1905 amendment of section 731 of the Code of Civil Procedure authorizing the institution of civil actions for the abatement of public nuisances by political officers did not abolish the individual's right of action.

More recently in *Wade* v. *Campbell*, 200 Cal.App.2d 54 [19 Cal.Rptr. 173, 92 A.L.R.2d 966], the Court of Appeal in a well-reasoned opinion followed the above cited decisions of the Supreme Court and numerous

other cited precedents in affirming the right of a citizen to seek a judgment abating a public nuisance in the form of operations causing air pollution.

The nuisance created by criminal exhibitions of hard-core pornography assumes the form of a pollution of the moral environment far more offensive and more damaging in its effects than the nauseous odors produced by the swine referred to in the *Johnson* case or the animals in *Wade* v. *Campbell, supra.*

As the incidence of rape and other sex crimes and of venereal disease among teenage juveniles and adults continues to increase to epidemic proportions in Los Angeles and its environs—a community now universally recognized for its dubious distinction as one of the major centers for the production, distribution and exhibition of pornography—public indignation will continue to rise.

There can be no reasonable doubt of the cause and effect relationship between the permissive liberalism which during the past decade, has countenanced and encouraged all forms of sex exploitation to a dramatically increased degree and the coincident and concurrent dramatic increases in sex crimes, in the incidence of venereal disease, in the prevalence of pregnancies among unmarried teenage females, in prevalent promiscuity, and in other obvious manifestations of moral decadence.

*A Theatre Building in Which Pornographic Motion Pictures are Exhibited Is a Building Used for the Purpose of Lewd Performances Within the Meaning of Penal Code Sections 11225 and 11226.*

Sections 11225 and 11226 of the Penal Code provide in their pertinent parts as follows:

"§ 11225. Every building or place used for the purpose of illegal gambling as defined by state law or local ordinance, lewdness, assignation, or prostitution, and every building or place in or upon which acts of illegal gambling as defined by state law or local ordinance, lewdness, assignation, or prostitution, are held or occur, is a nuisance which shall be enjoined, abated and prevented, whether it is a public or private nuisance."

"§ 11226. Whenever there is reason to believe that a nuisance as defined in this article is kept, maintained or is in existence in any county, the district attorney, in the name of the people of the State of California, must, or any citizen of the State resident within said county, in his own name may, maintain an action in equity to abate and prevent the nuisance

and to perpetually enjoin the person conducting or maintaining it, and the owner, lessee or agent of the building, or place, in or upon which the nuisance exists, from directly or indirectly maintaining or permitting it."

Although I have found no California appellate court decision which extends the application of the Red Light Injunction and Abatement Act to authorize an action by a private citizen to abate the exhibition of an obscene motion picture, I submit that both the literal terms of the act and the public policy which it plainly expresses dictate its application here.

In the context of the rising tide of pornography which has overwhelmed the agencies of law enforcement and in view of the conclusive evidence of its devastating effects, especially in the areas of sexual criminality and juvenile delinquency, the courts of California should have no difficulty in concluding that these remedial statutory provisions are applicable and available.

As the majority opinion properly concedes: *"The Red Light Abatement Law has been held by judicial construction to apply to lewd live stage shows and exhibitions."* (Italics added.) I submit that it borders upon the absurd to apply the law to live stage shows and exhibitions that are lewd and to deny its application to motion pictures that are patently lewd and obscene.

Based solely upon the assertion made in respondents' brief that to date this film has been exhibited only in closed theatres in California, the majority opinion accepts the fallacious argument that its exhibition does not constitute a public nuisance because "[o]nly those persons could view it who had paid the admission price and who had entered the theatre."

It is contrary to the teachings of common sense, and even of superficial observation, to suggest that only those who choose to patronize the purveyors of obscenity are adversely affected by its pollution of the moral environment. Manifestly, the Legislature did not declare houses used for illegal gambling, lewdness or prostitution to be nuisances and did not provide for their abatement to protect only those who might choose to visit such houses.

I would reverse the judgment of dismissal.

A petition for a rehearing was denied March 30, 1972, and appellants' petition for a hearing by the Supreme Court was denied April 26, 1972. Burke, J., was of the opinion that the petition should be granted.