[Civ. No. 11982. Fourth Dist., Div. Two. Aug. 3, 1972.]

PEOPLE ex rel. CECIL HICKS, as District Attorney, etc.,
Plaintiff and Respondent, v.
SARONG GALS et al., Defendants and Appellants.

## COUNSEL

Hecht & Diamond, Hecht, Diamond & Freis and Roger Jon Diamond for Defendants and Appellants.

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, and Oretta D. Sears, Deputy District Attorney, for Plaintiff and Respondent.

## OPINION

**GARDNER, P. J.** — The Sarong Gals is a bar featuring live entertainment. For several months it was rather obviously under police surveillance and among the hilarious highlights of the "entertainment" observed by the police were: (1) A naked female dancer masturbating on the stage. (2) A male customer openly masturbating while watching a naked dancer simulating sexual intercourse. (3) A naked dancer squatting down in front of and close to a customer and opening the lips of her vagina with her fingers. (4) A naked dancer rubbing a customer's sunglasses on her breast, vagina and anus before returning them to the customer. (5) A naked female dancer turning her rear to the customers, spreading her legs wide and using her fingers to spread the vaginal opening wide for the customer's edification. (6) A naked female entertainer simulating sexual intercourse by pushing her pelvis to within inches of the customer's faces. (7) A naked female dancer leaning over and wiggling her breasts in the faces of the customers. (8) While simulating intercourse, a naked female dancer vigorously rubbing nylon straps between her legs and over the pubic area.

There were 46 such incidents[1] covering a period of several months almost all of which resulted in arrests of the "dancers" for violation of Penal Code section 647, subdivision (a) or Penal Code section 314, subdivision 1.[2]

Plaintiff filed a complaint pursuant to Penal Code sections 11225-11235 (the Red Light Abatement Law) and secured from the court a preliminary injunction. This preliminary injunction enjoined the defendants from (a) using the premises for the purpose of lewdness; (b) from permitting per-

---

[1]The district attorney, with an eye for actuarial accuracy, has added up a total of 91 acts of lewdness in these reported incidents. Some of these are arguably not lewd. However, none would be recommended for a YWCA Christmas pageant.

[2]The following is a typical report of a police officer which was made a part of the declaration on which the preliminary injunction was based:

"I observed that MISS CHRISTENSEN was dancing to music from the juke box and as she danced during the progression of the dance, she removed the green dress, two green strip panels, a green bra and green G-string and two long green sequined gloves. As she took off the first sequined glove, she placed one end of it in her fist and held her fist tight against her vaginal area. She held the other end of the glove out straight away from her body and began to make motions as though she were accomplishing an act of masturbation with the glove. After removing her bra, she placed one of the strip panels around her neck so that the sheer nylon panel fell across her breast. She then went from customer to customer placing the panel over the customer's head and pulling him toward her breasts. Various customers in the bar shouted out, "Bite it, bite it," and the customer under the panel would move his mouth to within an inch of the arrestee's breast, then she would break away and move to another customer. On several occasions, she placed her bare buttocks within three

formances graphically depicting sexual intercourse, masturbation, fellation, cunnilingus, bestiality, buggery or masochism; and (c) from conducting any performance whereby the person's genitalia or anus was visible to any other person. This appeal is from an order denying the defendants' motion to dissolve the preliminary injunction.

The defendants contend the Red Light Abatement Law may not be applied to bars in which entertainment in the form of nude dancing is presented and the court may not enjoin the presentation of nude entertainment.

A

### The Law

■ The Red Light Abatement Law declares to be a public nuisance any place which is used for the purpose of lewdness, assignation or prostitution.

Defendants contend that when the Red Light Abatement Law was enacted (1913), the Legislature did not have in mind the type of activity described above.[3] This is apparently true. History does not record the existence of any topless-bottomless bars offering the type of entertainment described herein in 1913. Western folklore has it that prostitutes were good-hearted wenches who bedded their customers with no shilly-shallying around, nursed the sick in times of emergency, eventually married homesteaders and became pillars of the community. However, even prior to 1913, the exploitation of sexual desires for profit was apparently recognized as a social problem. Thus the Legislature specifically included lewd-

---

or four inches of a customer's face and would rotate them until the customer began to move toward her. On other occasions, she stepped up onto the railing surrounding the stage and moved her vagina, which was bare at that time, to within two or three inches of a customer's face. At this time she would spread her legs wide causing the labia major to part and the clitoris and vaginal opening to be visible. On one occasion, she was observed by Officer Collins to place her hand between her legs from the rear and to insert her index finger into her vaginal opening. A customer seated directly beside me handed her a pair of sunglasses and she rubbed them across her vagina, her breasts and her anus and then returned them to the customer. This same customer layed (sic) a dollar bill on the stage and she turned her back to him, spread her legs wide and, keeping her knees straight, bent over and picked up the dollar bill. As she did this her vagina and buttocks spread wide and her total vaginal area was exposed. She then reached up between her legs with one hand and spread the labia major even further, causing the labia minor to be stretched wide open."

[3]It can be argued with equal persuasion that the authors of the First Amendment to the United States Constitution would be more than a trifle shocked were they to discover some of the more bizarre behavior now protected by that amendment's lofty concept of freedom of speech.

ness as one of the grounds of the court's power to curb a public nuisance. In *People* v. *Bayside Land Co.*, 48 Cal.App. 257 [191 P. 994], the court held that lewdness—even though no incidents of prostitution or assignation had occurred — came within the Red Light Abatement Law. A recent opinion of the Court of Appeal held that the Red Light Abatement Law was inapplicable to allegedly obscene films. (*Harmer* v. *Tonylyn Productions, Inc.*, 23 Cal.App.3d 941 [100 Cal.Rptr. 576].) By dictum, the *Harmer* court stated that the law would apply to lewd, live stage shows. (*Harmer, supra*, pp. 943-944.) While we might question Harmer's statement that the law *cannot* apply to films, the case is unquestionably correct on its facts. A theater is not "used for the purpose" of lewdness if one obscene film is shown there, or one obscene stage show presented. It cannot be presumed from a single incident that the place will continue to be used to present the obscene material. (See *Perrine* v. *Municipal Court*, 5 Cal.3d 656 [97 Cal.Rptr. 320, 488 P.2d 648].) A single incident of prostitution is insufficient to bring a building under the Red Light Abatement Law. However, in the instant the case the record shows a continuing course of conduct.

We hold that the Red Light Abatement Law may be used to abate continuing acts of lewdness sans evidence of prostitution.

## B

### The "Entertainment"

■ Nevertheless, the defendants argue that the act was not intended to apply to "entertainment," lewd or otherwise. We cannot agree.

It is true that nude dancing is, according to *In re Giannini*, 69 Cal.2d 563 [72 Cal.Rptr. 655, 446 P.2d 535], protected by the First Amendment. From this fact, the defendants make the illogical leap to the conclusion that *lewd,* nude entertainment ("dancing") receives the same protection. Hardly. Lewdness is lewdness and covering it with a patina of "free expression" is a fiction which the law will not tolerate. Masturbating on the stage, causing customers to openly masturbate,[4] allowing patrons to peer into females' innards, simulating sexual intercourse and in other ways

---

[4] A theater may not be abated as a public nuisance merely because some of the patrons commit lewd acts. (*Tarbox* v. *Board of Supervisors*, 163 Cal.App.2d 373, 377-378 [329 P.2d 553].) But in *Tarbox*, the owner did not consent to the lewd acts, and attempted to control them. Here, the evidence shows no attempt to stop the customer who was masturbating; in fact, the dancer directed her performance exclusively toward the customer.

titillating the customers sexually amounts to lewdness — even though it may be entertaining.

The behavior described in the instant case amounts purely and simply to an exhibition calculated to arouse latent sexual desires and release the inhibitions of the viewers rather than a mode of expressing emotion and dramatic feeling by the performer.

While our Supreme Court has held that amusement and entertainment as well as the expression of ideas are encompassed within the right of freedom of speech (*In re Giannini, supra,* 69 Cal.2d 563, 569; *Weaver* v. *Jordan,* 64 Cal.2d 235, 242 [49 Cal.Rptr. 537, 411 P.2d 289]), entertainment value per se does not give an activity redeeming social importance. Presumably, the Romans of the first century derived entertainment from witnessing Christians being devoured by lions. Given the right audience, the spectacle of a man committing an act of sodomy on another man would provide entertainment value. However, neither this spectacle nor the activities described in the instant case are invested with constitutionally protected values merely because they entertain viewers. However chaotic the law may be in this field, no court has as yet adopted such an extreme result.

Public display such as those described above are within the type of public nuisances traditionally within the power of the state to regulate and prohibit. They involve no significant countervailing First Amendment consideration. Attempts to present this type of commercialized lewdness under the mantle of the First Amendment under a concept of communication of ideas stretches reason.

We hold that the "entertainment" described in the instant case is lewd and, therefore, not afforded the protection of freedom of speech under the First Amendment. The acts of the "entertainers" or "dancers" in the instant case were purely and simply obscene acts performed for the purpose of inciting the sexual desires and imaginations of a group of randy, beer-drinking patrons. As such, these acts amount to conduct not protected by the First Amendment. The prevention of these acts does not hinder the market place of ideas or freedom to distribute information and opinion.

## C

### THE ORDER

The plaintiff argues with considerable logic that given the past

history of the Sarong Gals Bar, it is not unreasonable to assume that if it is allowed to continue to offer nude entertainment a continuing problem of policing the portions of the order against lewd conduct will exist. Putting the proposition in another way, simply putting pants on the girls would make some of their more exotic behavior more difficult. However, while the suggestion is both logical and reasonable, we would observe somewhat ruefully that current law in this field is not necessarily blessed with either logic or reason. The efforts of the courts to strike a reasonable accommodation between the Puritan ethic and contemporary moral standards have not necessarily resulted in opinions which are classics of clarity or consistency.

While the Red Light Abatement Law can be applied to enjoin obscene stage conduct such as the graphic depiction of sexual activity (see *People* v. *Noroff,* 67 Cal.2d 791, 794, fn. 6 [63 Cal.Rptr. 575, 433 P.2d 479]), it cannot be used to prohibit free expression that is not obscene. Some of the police reports in the record here describe dancing that cannot be considered legally obscene; mere exposure of the genital area does not constitute obscenity under contemporary authorities. (*People* v. *Noroff, supra,* 67 Cal.2d 791.) If it cannot be assumed that a bookseller who has previously sold obscene material will again violate the law (*Perrine* v. *Municipal Court, supra,* 5 Cal.3d 656, 665), evidence of possibly obscene conduct in the past does not justify enjoining future conduct which is prima facie protected by the First Amendment.

Graphic depiction of sexual activity — standing by itself — does not possess the indicia of a theatrical performance. The injunction here is valid insofar as it prohibits this. But that portion of it purporting to enjoin "conducting or permitting to be conducted upon or within said grounds, building or premises any performance wherein or whereby any person's genitalia or anus is visible to any other person," is, under current law, an invalid restraint on free expression. Prior restraints on expression are presumptively invalid. (*Freedman* v. *Maryland,* 380 U.S. 51, 57 [13 L.Ed.2d 649, 654, 85 S.Ct. 734; *Bantam Books, Inc.* v. *Sullivan,* 372 U.S. 58, 70 [9 L.Ed.2d 584, 593, 83 S.Ct. 631].) A prior restraint on live expression, as opposed to films or books, would bear an even heavier burden of justification because the content of the future expression is unknown and cannot be presumed to be obscene. (*Perrine* v. *Municipal Court, supra,* 5 Cal.3d 656.) In fact, since the only conduct which is obscene, under present authorities, is prohibited by the first part of the injunction, the prohibition of nude dancing of any sort is directed to protected expression. (*In re Giannini, supra,* 69 Cal.2d 563.) Therefore,

under the compulsion of the above authorities, we hold that this portion of the preliminary injunction is violative of defendants' constitutional rights.

The injunction is modified by striking the language quoted above and designated as section "c." As so modified, the order granting the preliminary injunction is affirmed.

Kerrigan, J., and Tamura, J., concurred.

Petitions for a rehearing were denied August 14 and August 24, 1972, and appellants' petition for a hearing by the Supreme Court was denied November 9, 1972. Peters, J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.